W. SHAFFET et als. v. JAMES C. JACKSON et als.

The father, although he has not been confirmed as tutor of his minor children, may provoke a partition between himself and his minor children, by the appointment of a curator *ad hoc* to the minor, under Art. 116 of the Code of Practice.

The inventory of the property to be divided, may be made after the sale is ordered.

Where minors are sued for a partition, a family meeting is not necessary to authorize the suit, or to fix the terms of sale, and it is not necessary the property should sell for its appraised value to make the sale valid.

APPEAL from the District Court of the Parish of East Feliciana, *Ratliff*, J. *Muse & Hardee*, for plaintiffs and appellants :

*William and Catharine Shaffet*, the plaintiffs, seek to recover of the defendants, *James C. Jackson and others*, each one their portion of an undivided section of land situated in the parish of East Feliciana, which belonged to the community of acquets and gains which existed between their deceased mother, *Mary Shaw*, and *John Shaffet*, also deceased. They seek to recover their portion of the land in controversy upon the ground, that the entire tract of land was illegally sold by their father after the death of their mother, at a probate sale made in 1829. Having asserted their rights to the land claimed as heirs of their mother, they allege the following nullities in the probate sale, under which the defendants claim the land, viz :

1st. That petitioners and their co-heirs were minors, and no tutor nor under-tutor was ever appointed to represent them.

2d. Because no tutor nor under-tutor having been appointed, nor a special tutor, the Probate Court could not render any decree which would in any manner bind petitioners, they being no parties to the same.

3d. Because no inventory had been made previous to the decree of sale.

4th. Because no family meeting was convoked to deliberate upon the terms of sale ; and said pretended sale was made without the advice of a family meeting.

5th. Because said land did not bring the appraisement at said sale.

6th. Because said *John Shaffet*, the father of petitioners, and the said *James C. Jackson*, pretended to become responsible for the price of said pretended bid at said sale, whereas no person had been appointed to represent petitioners, who were minors of tender age, or collect such sum as might (had the proceedings been legal) have been due them.

7th. Because the said proceedings and pretended sale, under which said *James C. Jackson* claims, are absolutely null and void, illegal and irregular, as will the more fully appear when produced by said *James C. Jackson* or petitioners.

The petitioners pray that a partition may be made between them and the said *James C. Jackson* (who represents one heir, by inheritance from his two children, born of his marriage with one of plaintiffs' co-heirs,) and the other co-heirs of petitioner. They pray that the said *James C. Jackson* may be decreed to pay them ten dollars per month for the use of their portion of the said land so long as he retains it ; also, for an inventory and for general relief in the premises, &c

The defendant, *Jas. C. Jackson*, answers by general denial ; admits his possession of the land claimed, and pleads title under the probate sale, which he alleges was regular and legal ; refers to suit 588 for a more perfect description of his title. He also pleads the prescription of five, ten and twenty years.

The defendant, *S. W. Newport*, pleads title to one undivided half of the tract of land in controversy under a syndic sale made in the suit of *James C. Jackson* against his creditors. He admits the probate sale as the foundation of his half of said land, and avers that it was regular. He also pleads title to two heirs' portion of the remaining one-half, by purchase from two of the plaintiffs' co-heirs. He admits the heirship of plaintiffs, and adopts the answer of his co-defendant, *James C. Jackson*. He also avers that he sold his entire interest in the said tract of land of *R. W. Newport*, before his death—all the heirs of whom adopt and join in his answer.

There having been a verdict and judgment in favor of the defendants, the plaintiffs have appealed to this court.

For a reversal of the judgment appealed from, and for a judgment in their favor, the plaintiffs rely upon the points stated in their petition, and before stated in this brief.

In support of the first, viz ; " That petitioners were minors, and no tutor nor under-tutor was appointed to represent them," the court is referred to the following authorities : C. C., Art. 1269 ; 2d Hen., p. 955, Nos. 42 and 43, and authorities there cited ; also, p. 959, No. 3. The court is also referred to pages 15 to 25 of the record inclusive, in which the entire mortuary proceedings of the deceased, *Mrs. Shaffet*, will be found, including the probate sale ; from which it will be apparent that the first point relied upon is fully sustained by the facts. There was no family meeting ever convened to deliberate upon the interests of these plaintiffs, who were children of tender age when their mother died. There was no under-tutor ever appointed to them. There was no oath of fidelity ever taken by their natural tutor, as the law and the repeated decisions of this court require. The record also shows that the present defendant, *James C. Jackson*, was a party to all those proceedings, and cannot plead ignorance of them. On the first point, the court is also referred to 2d Hen., p. 977, No. 12.

In support of the second point relied upon, viz : " That the plaintiffs could not be bound by a decree of the Probate Court, to which they were not parties," the court is referred to the 5th N. S., p. 655, *Donaldson* v. *Dorsey.*

In support of the third point, viz : " That no inventory of the estate of the deceased mother of the plaintiffs was made previous to the rendition of the decree for the sale of the same," the court is referred to Articles 329 and 333 of the Civil Code.

In support of the fourth point, viz : " That there was no family meeting convoked to fix the terms of sale, &c.," the court is referred to 2d Hen., p. 969, No. 35, and the authorities there cited ; also, p. 970, No. 46.

The fifth point relied upon by the plaintiffs is, " That the said land did not bring the appraisement at said pretended sale."

On page 15 of the record, the court will perceive that the land in controversy was appraised on the 4th of April, 1829, at nineteen hundred and twenty ($1920) dollars. On page 22 of the record, the court will perceive that the said tract of land was adjudicated to the defendant, *James C. Jackson* for *five hundred and ten* ($510) *dollars ! !* We invoke, in behalf of these children, the 337th Article of the Civil Code, which has been wisely designed to save the unprotected minor from such sacrifices as this. Nor will it be permitted to an unnatural father, (as we suppose,) under the pretence of obtaining a *partition* with his own motherless children, thus to sacrifice their little patrimony.

The sixth point relied upon is, " That the father of plaintiffs became responsible, as the surety of the purchaser, *James C. Jackson,* for the purchase money." See process verbal, p. 22 of the record. This surely cannot be regarded as a sale of minor's property !

The seventh and last point relied upon for the reversal of the judgment of the court *a quo* is, " That the entire proceedings, under which the property of these plaintiffs was sold, are absolutely null and void." See 2d Hen., p. 967, No. 8.

The defendants have relied upon the plea of prescription of five, ten, and twenty years, which, in the opinion of plaintiffs' counsel, cannot prevail.

In the notes of testimony, on page 11, the court will find the following admissions, viz : " The heirship as set forth in this case is admitted. It is admitted that *William Shaffet*, one of the plaintiffs, was born in July, 1825. It is admitted that *Catharine Shaffet* was born in 1817, or 1818."

On the 6th of October, 1852, the citations in this case were served upon the defendants. From these facts it will be apparent, that but seven years and three months had elapsed from the date of the majority of the plaintiff, *William Shaffet*, when the citations were served. It will, however, be apparent, that some fourteen years had elapsed from the date of the majority of *Catharine Shaffet* before the institution of this suit. But we submit, with great confidence, that none but the *longi temporis* can avail the defendants in this case. See 2d Hen., p. 1270, No. 2 ; p. 1265, No. 2 ; p. 1266, No. 4.

Should the court come to the conclusion that the plaintiffs are entitled to their respective portions of the land in controversy, the court will perceive that they are also entitled to recover their portion of the revenues of the land claimed, according to the evidence to be found on pages 11, 12 and 13.

SHAFFET
*v.*
JACKSON.

*P. Pond* and *J. B. Smith*, for defendants :

This is a suit to set aside a probate sale of a tract of land made in 1829, and to subject one-half of it to the ownership of plaintiffs, who claim solely by inheritance from their mother, *Mary Shaffet*. They allege that the land was held in common between their father and mother ; that their father, *John Shaffet*, provoked a probate sale ; that the proceedings under which the sale was made were illegal, and did not divest them of their mother's half of the land ; that there were seven heirs at the death of their mother, one of whom subsequently died without issue. They ask that the sale be set aside, and they be decreed to be the owners of one undivided half of said land, by inheritance from their mother.

The defendant, *R. W. Newport*, admits the heirship as alleged ; denies any illegality in the proceedings and sale of the land, and alleges that he is the owner of one undivided half by virtue of a purchase at the syndic sale of the property of *J. C. Jackson*, made to *R. W. Newport*, and subsequently transferred to him ; that he also owns the undivided interest of *Daniel* and *John C. Shaffet*, as alleged in plaintiffs' petition, by sale before a notary, and two-sixths of the heir's portion that died, he having died before the transfers made by said *John* and *Daniel*. He pleads the prescription of five, ten and twenty years.

Since this suit was instituted, *R. W. Newport* and his wife died. At their probate sale *Mrs. Susanna Mills* became the purchaser of the *Newport* interest in the land. The heirs of *Newport* now unite with *Mrs. Mills*, and ask that she be decreed to be the owner of one undivided half.

The plaintiffs disclaim all ownership, except by inheritance from their mother.

To sustain the probate sale of the land made in April, 1829, reference is prayed to the brief of *J. C. Jackson*. It is thought that the plea of prescription of ten and twenty years will relieve the defendants from plaintiffs' claim, and cure any defect as to form that may be found to exist.

The sale was made in April, 1829, and duly recorded in the office of the parish Judge.

*Jackson* held possession as owner under a title translative of property, until the syndic sale ; that *Newport* and *Jackson* continued their possession under the syndic sale until this suit was instituted, 6th October, 1852, a period of twenty-three years.

To sustain the plea of prescription, your honors are referred to 2 An. 466 ; C. C. 1024.

The only grounds plaintiffs rely on is the absence, in the record, of some forms of law in the probate proceedings of *Mrs. Mary Shaffet*. This, they think, raises the presumption that there were defects in the proceedings, and the forms of law were never complied with, and throws the burden of proof on the defendants. This, after the lapse of near thirty years, would be requiring them to prove a negative. When it is known how very defective and irregular the papers have been kept and preserved at that early period, this court will hesitate before requiring a negative proof. The presumption is, that all legal proceedings and orders of court are regular ; that courts do their duty, and he who alleges otherwise, must show it. It is respectfully suggested that a mere certificate of the Clerk that a certain number of papers referred to is all that he can find or knows anything about in his office, is not a presumption sufficient to satisfy the court, that there were no other proceedings had therein. A presumption of such a nature should be so strong, that the absence of other papers could not be otherwise accounted for. May not some of the papers, orders and proceedings have been lost ?

If your owners should come to the conclusion that the probate sale was defective, and the plea of prescription will not prevail, then it is respectfully submitted that *R. W. Newport* was the owner by purchase from *John C.* and *Daniel Shaffet* of two-sixths of said land, and that he also is the owner of the father's undivided half of one other sixth part of the land, the plaintiffs only claiming by inheritance from their mother's one-half Five-twelfths, therefore, of the tract of land must, according to the petition of plaintiff, and acts of sale from said *John C.* and *Daniel* belong to the defendant, *Susan Mills*, who purchased the *Newport* interest.

LAND, J. This is a petitory action for a tract of land, in which plaintiffs claim title by inheritance from their mother, *Mary Shaffet*.

They admit a probate sale of the land in 1829, under which defendants claim title, but allege its nullity, substantially on the following grounds :

First—Because the plaintiffs were minors, and no parties to the judgment, under which the land was sold, for the reason, that no tutor, nor under-tutor, nor special-tutor was ever appointed to represent them.

Secondly—Because no inventory of the property had been made previous to the decree of sale.

Thirdly—Because no family meeting was convoked to deliberate upon the terms of sale, and said sale was made without the advice of a family meeting.

Fourthly—Because the land did not bring its appraised value at the probate sale.

In 1829 *John Shaffet* instituted suit against his children, the issue of his marriage with *Mary Shaffet*, deceased, for a partition of the community property. At the time of the commencement of the suit for a partition the plaintiffs were minors. In pursuance of the prayer of the petition, a curator *ad litem* was appointed to represent them and their co-minor heirs. Experts were also appointed to determine whether the property could be divided in kind. They reported that a sale was necessary to effect a partition.

On the 23d of February, 1829, a judgment was rendered, ordering the property to be sold, and on 6th of April, 1829, the sale was made and the land in dispute was adjudicated to *James C. Jackson*, at the price of five hundred and ten dollars, on one and two years credit, with ten per cent. interest after maturity.

The defendants claim title under this sale, and plead the general issue and the prescription of five, ten and twenty years.

As to the first ground of nullity alleged by plaintiffs, it does not appear that the father of the minors was ever confirmed by a judgment as their natural tutor, or that an under-tutor was ever appointed, but it does not follow from these facts that the minors could not be sued, and that a judgment rendered against them would be necessarily void. Article 116 of the Code of Practice provides, that if the minor against whom one intends to institute a suit has no tutor nor curator *ad litis* the plaintiff must demand that a curator *ad hoc* be named to defend the suit.

In the suit for partition, the plaintiff prayed for and obtained the appointment of a curator *ad litem* for the minors to defend the action, and as against the purchaser in good faith at the judicial sale, the minors must be held at this distant period to have been properly represented in the suit, or at least to have ratified the proceeding by their long, silence and acquiescence.

The second ground of nullity is untenable. The evidence shows that an inventory of the property was taken on the 4th of April, 1829, two days before the sale, which was sufficient. *Molinari* v. *Fernandez*, 2 An. 553.

The third and fourth grounds are also untenable.

Where minors are sued for a partition a family meeting is not necessary to authorize the suit or to fix the terms of sale. C. C. 1237. Nor is it necessary in such a suit, that the property should sell for its appraised value to make the sale valid. *Jacobs* v. *Lewis*, 8 L. 179.

Sales directed by the court of probates are judicial sales, and the purchaser is protected by the decree ordering them, and if the court has jurisdiction the purchaser need not look beyond the decree itself. *Lalannes' Heirs* v. *Moreau*, 13 L. 431.

SHAFFET
v.
JACKSON.

It is, therefore, ordered, adjudged and decreed, that the judgment be affirmed, with costs in both courts.

MERRICK, C. J., having been of counsel, recused himself.