## Boyd *v.* Wyley and others.[1]

*(Circuit Court, W. D. Louisiana. October Term, 1883.)*

**1. Judicial Sale—Fraud—Conspiracy.**
    If there were any fraud or conspiracy in the proceedings, of which there is no proof, Wyley, the purchaser, was not a party to it, and knew nothing of it.

[1] Reported by Talbot Stillman, Esq., of the Monroe, Louisiana, bar.
Affirmed. See 8 Sup. Ct. Rep. 364.

**2. SAME—CONDITION OF PROPERTY.**

Complainant's losses, if any, are attributable to the indifferent management and neglect of the executor, her husband, and to the physical and financial prostration of the country in that section of Louisiana, at the period when the sale was made, rather than to any acts of the defendants.

**3. SAME—PRESUMPTION—ANSWER FOUND ON FILES.**

The presumption "*omnia rite essa acta*" would justify the court in treating as genuine a paper purporting to be an answer, and found among the papers of the suit, although there is no indorsement of the filing thereof by the clerk, in the absence of proof to the contrary. But the testimony of one of the members of the firm, whose signature is attached to the answer, shows he wrote the answer, and he thinks it was filed, and that the outside page of the double sheet was torn off.

**4. SAME—LAPSE OF TIME.**

Under the circumstances, and after the lapse of more than 10 years, a judgment rendered in the case by a court of competent jurisdiction will not be treated as a nullity.

**5. SAME—PLEADING—STATUTE OF LIMITATIONS.**

Under the rules of pleading or practice, in equity, it is necessary that the cause or reason which prevented the statutes of limitation or prescription from running in the particular case should be stated in the bill, in order to be permitted to offer evidence thereof. This has not been done by complainant.

**6. SAME—STATUTE OF LIMITATIONS A BAR.**

But disregarding this rule, and giving complainant the benefit of all her evidence, there is no good reason shown why the statutes of limitation or prescription should not apply in this case.

**7. SAME—PURCHASER AT JUDICIAL SALE—COLLATERAL ATTACK.**

A purchaser at judicial sale, in Louisiana, need not look beyond the jurisdiction and decree of the court ordering the sale. The truth of the record concerning matters *within its jurisdiction cannot be disputed* in an action like this.

14 La. 146; 7 Rob. 66; 10 Rob. 396; 14 La. Ann. 154; 22 La. Ann. 175; 25 La. Ann. 55; 28 La. Ann. 755.

In Equity.

*Boatner & Boatner* and *Mott, Sanders & Kelly,* for complainant.

*John T. Ludeling, J. R. Beckwith,* and *W. G. Wiley,* for respondents.

BOARMAN, J. The complainant alleges that she is the owner of a valuable plantation in Carroll parish, known as the "Raleigh plantation," which was bequeathed to her as a particular legatee by her father, James Railey, who died in A. D. 1860. She avers that W. G. Wyley and others, mentioned in the bill, conspired together to fraudulently deprive her of the said plantation by causing it to be conveyed to said Wyley under the forms of a judicial sale, which was made in fraud and without authority in law in October, 1868; that these defendants covertly, taking advantage of the absence of F. W. Boyd, her husband, and executor of the Railey estate, institututed suit against him to destitute him from office in the probate court, Carroll parish, and in July, 1868, caused C. R. Egelly to be appointed administrator of the said succession; that said Boyd was not cited, and made no voluntary or authorized appearance in the suit, and knew nothing of the proceedings under which the sale to Wyley was made until after the said illegal and fraudulent sale had been completed; that the removal of Boyd and appointment of Egelly was without any effect in law; that Egelly, under the pretense of paying debts against the succession, a large part of the debts being for law-

yers' fees claimed as due to the law firm of which one of these defendants was a member, caused the said plantation to be sold without any notice to claimant, who alleges that she, under her father's will, was and is, *as a particular legatee,* the owner of said plantation; that these defendants caused the plantation to be appraised, in fraud of and in injury of her rights, by incompetent and unworthy appraisers, at the vile price of $2,533.05, at which price it was adjudicated to Wyley, when it was worth much more, and had been appraised, two years before, at over $95,000, and he is now, and has been since October 20, A. D. 1868, in possession of the valuable plantation and its large revenues under said fraudulent sale.

The prayer of the bill is that the will under which she claims as a particular legatee be declared valid, and that she be put into possession as owner of the plantation bequeathed to her; that Wyley, having purchased in bad faith, be decreed to account to her for the revenues and rents thereof since October 20, A. D. 1868.

This statement of her suit leaves out much of the details of the bill, and is but a summary of the charges therein; but it is sufficient for the purpose of disposing of the case, under the view I have taken of the defensive pleadings, which disclose matters in bar, in abatement, and in answer to the charges of complainant.

The defendant Wyley admits having bought the Raleigh place for $2,533.05 at said succession sale. Though not required by complainant to answer under oath, he has filed answer, under oath, denying that he at any time ever combined with the defendants named, or with any one else, to defraud, wrong, or injure, or deprive, either under the forms of law or otherwise, Mrs. Boyd of her rights or property; that he knew nothing of or concerning the proceedings by or under which she claims to have been injured; that he knew nothing of the removal of Boyd, or of the other proceedings under which the sale of the Raleigh plantation was invoked, until after he purchased the same; that he did not know the plantation was to be sold until he saw the advertisement in the newspaper published in Carroll parish. In addition to this denial, which is affirmed by the evidence of himself and by the testimony of other witnesses, he pleads the prescription of five and ten years, and all others applicable.

Art. 3478, Civil Code. "He who acquires an immovable in good faith and by just title prescribes for it in ten years."

3481. "Good faith is always presumed in matters of prescription. * * *"

3487. " * * * By term 'just title' is meant ' a title which the possessor may have received from any person whom he honestly believed to be the real owner, provided the title were such as to transfer the ownership of the property.'"

The mortuary papers in Railey's succession show that suit was instituted by the Louisiana Bank and other creditors of his succession to remove Boyd from the executorship, because he had left the state, and abandoned his trust; and judgment, indicating in its language the

presence of all necessary parties, removing him, and appointing Egelly administrator, was rendered July 18, 1868. But it is contended that Boyd was not cited and made no appearance in the suit, and, in default of citation or of voluntary appearance, Boyd's executorship could not be affected by the judgment, which was an absolute nullity; that under the proceedings which followed, all of which were procured by fraud and wrongful conspiracy, Wyley could not have purchased in good faith; and that his illegal title cannot, as against his equitable and legal rights, be made good or cured by any statute of limitations.

To pass upon the plea of prescription provided for in article 3478, Civil Code,—the only one I think it necessary to consider,—it becomes necessary to examine but a part of the testimony in the immense volume of evidence presented to the court. But, before discussing the evidence bearing particularly upon the plea of prescription, it may be well for me to state here that on the hearing of this case, at which time most, if not all, of the evidence was read to the court and illustrated by the argument of learned counsel, and on a most careful consideration of the evidence subsequently made, I was and am now clearly of the opinion that if there was any fraudulent conspiracy or corrupt collusion by or between any of the several persons mentioned in the bill, to deprive complainant of her property, Wyley knew nothing of it, and was in no way a party to the wrongful acts.

In the early years after the war the testimony in this case affirms, what is historically known to be true, that the section of the state in which the Raleigh plantation is situate was, by overflows and other physical and moral causes, almost entirely bereft of its old-time prosperity and value. The plantation was greatly damaged by previous overflows, and had but little fencing, and it is shown by defendant Wyley that he, shortly after purchasing it, expended $25,000 in improvements. Defendant has shown, whatever may have been the general causes that depreciated property on the Mississippi river in 1868, that many thousands of acres of land, as valuable as the plantation in question, were sold for prices not unlike the paltry price at which Wyley bought his place. The testimony as to the scarcity of ready money, as to the price for which much valuable land sold when disposed of at forced sale, and as to the political, moral, and physical bankruptcy of the country, leads me to believe that the complainant and the unpaid creditors of her father's succession were the victims to the indifferent management and neglect of the executor, and to the physical and moral prostration of the country, which was apparent everywhere in Louisiana in the early years following the end of the war, rather than to the acts of any of these several defendants.

Was Boyd cited or properly represented in court when the judgment removing him was rendered? Among the mortuary papers found in the succession of Railey, in the probate court in Carroll parish, a paper purporting to be an opposition or appearance of Boyd,

executor, appears, in a much worn and mutilated condition. It is contended that this paper is wrongfully among these papers, and it was never filed before the judgment, if at all. Upon the genuineness and legal effect of this paper depends the matter of Boyd's voluntary appearance. It is a single sheet or piece of legal-cap paper, with no indorsement or filing on the back of it, as is usual with papers of a like nature. There is nothing in the evidence to show that it came surreptitiously among the mortuary papers. If there was no evidence one way or the other touching the origin, the authorship, and filing of the paper, the presumption of the law that all judicial proceedings are presumed to be regular until the contrary is shown, would sustain the genuineness of the papers, and warrant the court in giving to it its full legal effect. But there is testimony for and against its having been properly filed in the suit to remove Boyd. The testimony of Pilcher, a member of the law firm of Goodrich, Pilcher & Montgomery, is that his firm were, in A. D. 1868, Boyd's lawyers in the management of the Railey estate. He says he wrote the paper at the suggestion of Goodrich, who had especial charge and control of Boyd's law matters, and that it was written from a memorandum given to him by Goodrich, who was frequently absent from their place of business. He does not remember about filing it, thinks it must have been originally a double sheet of legal-cap paper, and the indorsement and filings were written on the cover page, as was his custom in preparing such papers.

Pilcher's testimony, though given by him with such inexactness as often characterizes the evidence of truthful men, who testify as to things which occurred 15 years before, is entitled to much importance, because he was then in a position to know more of the matter than any one whose testimony has been presented to the court.

There is no evidence of a very positive character in the record upon this point, and his testimony, together with the presumption of law and of fact that the probate judge would not have allowed a judgment to be taken removing the executor without the presence, in law, of the proper parties, adds sufficiently to the clear legal presumption, which favors the genuineness of the paper in question, to overcome the evidence of complainant, who offers nothing to show that it came surreptitiously among the mortuary papers, or nothing to discredit Pilcher's evidence. The disputed paper purports to be an answer of Boyd. It is found in the record where it should be, and it must be taken as satisfactorily established that Boyd, as the record shows, was represented in the suit for his removal; and whether Pilcher's law firm, or any member of it, had or had not authority to represent him, a judgment of a probate court *where the record shows jurisdiction*, as in this case, cannot, in an action in equity or law to rescind a probate or judicial sale, be treated as an absolute nullity. It appears that the judgment of which she complains was not appealed from; that no action was taken to annul it, or to set aside any of the proceedings which

followed, or were dependent on it for their validity, until this suit was filed, in September, A. D. 1881,—more than 10 years after the purchase by Wyley.

It is claimed, however, in argument, that as Mrs. Boyd was in ignorance of all the proceedings by which she was fraudulently deprived of her property until after the sale was made to Wyley, and as she was unable, on account of her inability to defray the expenses of a lawsuit, to employ lawyers to prosecute her claim until after the lapse of 10 years, her rights in equity cannot be affected or barred by any of the statutes of limitations relied on by defendants. Under the rules of pleading and practice in equity, it is clear that in order to offer evidence in avoidance of, or for exemption from, the statute of limitations upon her claims, she should have set forth in her bill the reasons why she was, for so many years, ignorant of the ruinous and damaging proceedings of which she now complains, or set forth what were the impediments or hindrances to her securing lawyers to prosecute her claims at an earlier date. Such allegations do not appear in her bill; but, not restricting her under this rule of practice, I have examined all the testimony upon this point, and I find the following summary of the proceedings had in the probate court of Carroll parish: Boyd was removed July 16, 1868, and Egelly, after due public notice, was granted letters of administration on the sixteenth of September following. On application of Egelly and certain creditors an order for the sale was granted, which, after advertisement, was made on the twentieth of October, 1868. Egelly rendered his final account, and, after due notice, it was without opposition homologated on the seventeenth of April, 1869. In 1869 Wyley sued out his monition, in which, after public notice, judgment was rendered. In addition to this, Mrs. Boyd says her husband was in Carroll parish in January, 1868, and she does not know whether he was there later in the summer, but she says that she knew of the sale to Wyley in the fall of 1868.

The evidence shows, too, that Boyd, claiming to be executor, in A. D. 1874, collected $37,000 from the federal government on account of a cotton claim belonging to Railey's succession, no part of which large sum was paid to any of the numerous succession creditors of Railey's succession. This money belonged to the succession, and, with a very small part of it, she or her husband, who still claimed to be executor, could have defrayed the expenses of a suit to bring the Raleigh plantation back into the succession assets. It is difficult, under this summary of facts, to see any good reason for denying to Wyley the benefit of the prescription of 10 years, under which the Civil Code wisely protects purchasers in good faith who have been holding and possessing, as owner, more than 10 years under a title translative of property.

If a further reason for confirming Wyley's legal title was necessary, it can be found in the principle of law, abundantly supported by numerous decisions of the supreme court in Louisiana, that a pur-

chaser at a judicial sale is protected by the order or decree of the court, and he need not look beyond the decree and the jurisdiction of the court ordering the sale; the truth of the record concerning matters *within its jurisdiction* cannot be disputed in an action like this. 14 La. 146; 7 Rob. 66; 10 Rob. 396; 14 La. Ann. 154; 22 La. Ann. 175; 25 La. Ann. 55; 28 La. Ann. 755.

Under the view I have taken of the defensive pleadings and proof, I have thought it unnecessary to discuss, only in a general way, the relations of the several other defendants, aside from Wyley, to the complainant's demand; but the opinion and decree of the court will protect all of them against the demands of complainant.

Decree for defendants.

